UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 16-cv-20331-KING

H.S., a minor, by and through her
Parents, natural guardians, and next friends,
R.S. and L.S.,

     Plaintiff,
vs.

CARNIVAL CORPORATION,
a Panamanian Corporation,
MAX HARMON, an Ohio resident, and
JODEE C. EDWARDS, an Ohio Resident,

     Defendants.
_____/

## FINAL SUMMARY JUDGMENT

**THIS CAUSE** comes before the Court upon Defendant Jodee C. Edwards' Motion for Final Summary Judgment (DE #54), filed on November 14, 2016. The Court has additionally considered Plaintiff's Response in Opposition (DE #60), filed January 3, 2017, and Defendant's Reply thereto (DE #61), filed January 10, 2017. Upon review of the record and careful consideration, the Court finds that the Defendant's Motion for Summary Judgment should be granted.

I. **Background**

This case arises out of an alleged sexual assault upon Plaintiff H.S., a minor, allegedly perpetrated by E.H., the minor son of Defendant Jodee C. Edwards ("Edwards"), while aboard a Carnival cruise ship in January of 2015. Plaintiff's Amended Complaint (DE #33) alleges a single count of negligent supervision against Edwards on the basis that she knew or

1

should have known that, without adequate supervision and reasonable control, her son E.H. would engage in conduct that would cause injury to Plaintiff.[1]

In January of 2015, Plaintiff H.S., a minor age 14, was a passenger aboard the Carnival *Pride* with her mother, L.S., for a week-long cruise. E.H., a minor age 16, was also a passenger on the *Pride*, and was accompanied by his brother, Defendant Edwards, her boyfriend, and two family friends. E.H. stayed in a stateroom with his brother, age 18, and the two family friends, aged 19 and 21. Defendant Edwards and her boyfriend stayed in another stateroom.

The *Pride* contains a teen nightclub, known as "Club O2," which is intended for use by adolescents in the specific age range of fifteen to seventeen years old. Both H.S. and E.H. were registered to participate in Club O2 activities, and over the course of the cruise, H.S. and E.H. each attended youth events at Club O2, and each associated with another minor, one K.A. During the cruise, H.S. and K.A. formed an intimate relationship, engaging in sexual conduct on at least four days of the seven day cruise. E.H. did not have any sexual contact with H.S. until the final night of the cruise.

On the second to last night of the cruise, H.S. went to a movie being shown on the Lido deck of the *Pride* with other minors, including E.H. During the movie, E.H. provided alcohol to H.S. and the other minors present. After drinking alcohol during the movie, H.S., E.H. and others took their alcoholic beverages to Club O2, where they continued to drink alcohol.

---

[1] The Amended Complaint also alleged claims against Carnival Corporation for negligence (Count I), fraud in the inducement (Count II), and fraud by concealment (Count III). The Court dismissed all three of these counts against Carnival with prejudice, and Plaintiff's only remaining claim in this case is her count for negligent supervision (Count IV) against Edwards.

2

On the final night of the cruise, H.S., E.H. and K.A. again attended an event at Club O2. At some point during the event, E.H. represented that he could obtain more alcohol from his brother's bottle of Jack Daniels whiskey in his stateroom. E.H. then invited both H.S. and K.A. back to his stateroom to drink alcohol again. Upon arriving at E.H.'s room, E.H., H.S., and K.A. each consumed multiple alcoholic beverages, each consuming three to four drinks of the Jack Daniels E.H. procured from his brother. After consuming the alcohol, H.S., K.A., and E.H. engaged in sexual relations in E.H.'s stateroom.

Though aware that Carnival policy required minors to share staterooms with adults over the age of 23, after checking in for the cruise Defendant Edwards switched room keys among her boyfriend and the boys and was aware E.H. would be staying in a stateroom without adult supervision. Edwards never visited the room E.H. shared with his brother, and did not check in on activities occurring in E.H.'s stateroom at any point during the cruise. Moreover, Edwards did not explicitly give E.H. rules regulating his behavior while on the ship, and relied in part on the *Pride*'s security and employees for E.H.'s safekeeping during the times she was not with E.H.

On previous cruises, Edwards had used a device known as a "Rum Runner" to smuggle alcoholic beverages onto the cruise. E.H. and his brother were aware that Edwards had previously used Rum Runners to smuggle alcohol on previous cruises. E.H.'s brother used a Rum Runner to smuggle the Jack Daniels whiskey provided by E.H. to H.S. on the night of the incident.

Prior to the subject cruise, E.H. had lived with Edwards his entire life. Edwards was not aware of any sexual abuse upon E.H., and had never heard of any instances of E.H. inappropriately touching others. Moreover, Edwards believed that E.H. had never had sex.

3

Prior to the last night of the cruise, Edwards was aware that E.H. had consumed alcohol on two occasions, each time in her presence and with her consent: once at a wedding, and once more during a shore excursion on the subject cruise. There is no record evidence showing that Edwards knew E.H. had ever provided alcohol to others.

## II. Legal Standard

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers or other materials; or showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* at 56(c)(1). "In determining whether summary judgment is appropriate, the facts and inferences from the facts are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine material fact and that it is entitled to judgment as a matter of law." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Further, the existence of a "scintilla" of evidence in support of the non-movant's position is

4

insufficient; there must be evidence on which the jury could reasonably find for the non-movant. *Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Likewise, a court need not permit a case to go to a jury when the inferences that are drawn from the evidence, and upon which the non-movant relies, are "implausible." *Matsushita*, 475 U.S. at 592-94; *Mize v. Jefferson City Bd. Of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).

At the summary judgment stage, the judge's function is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In making this determination, the Court must decide which issues are material. A material fact is one that might affect the outcome of the case. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* The Court must also determine whether the dispute about a material fact is indeed genuine, that is, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see, e.g., Marine Coatings of Ala., Inc. v. United States*, 932 F.2d 1370, 1375 (11th Cir. 1991).

III. **Discussion**

Under Ohio Law, parents are not generally liable for damages caused by a child's wrongful conduct. *See Huston v. Konieczny*, 556 N.E. 2d 505, 509 (Ohio 1990).[2] However, parents can be held liable for torts committed by their children when the injury complained of is the foreseeable consequence of a parent's negligent act. *Id.* Specifically, the Ohio

---

[2] Both Florida law and Ohio law are in harmony on this point. *See Gissen v. Goodwill*, 80 So. 2d 701, 703 (Fla. 1955) ("It is basic and established law that a parent is not liable for the tort of his minor child because of the mere fact of his paternity."). Accordingly, as the laws of each state are not in conflict, reconciling the two is not necessary. As the parties have both briefed the issues under Ohio law, and Defendant is an Ohio resident, the Court will apply Ohio law to this dispute.

5

Supreme Court has recognized that parents can be held liable for the torts of their children in three circumstances: (1) "when they negligently entrust their child with an instrumentality (such as a gun or car) which, because of the child's immaturity or lack of experience, may become a source of danger to others," *id.* at 509; (2) "when parents know of the child's wrongdoing and consent to it, direct it or sanction it," *id.*; or (3) when they "fail to exercise reasonable control over the child when the parent knows, or should know, that injury to another is a probable consequence." *Id.* Specifically as to this third exception: "[t]o establish foreseeability of the act or injury [pursuant to negligent supervision], plaintiff must prove that specific instances of prior conduct were sufficient to put a reasonable person on notice that the act complained of was likely to occur." *Ware v. King*, 931 N.E.2d 1138, 1145 (Ohio Ct. App. 2010)

There is no record evidence or allegation that Edwards entrusted E.H. with any dangerous instrumentality resulting in the alleged sexual assault of H.S., and there is no record evidence or allegation that Edwards consented to or sanctioned E.H.'s alleged sexual assault of H.S. Accordingly, the Court will confine its analysis to whether Plaintiff has produced any evidence that Edwards knew, or should have known, that E.H. would commit the sexual assault alleged.

Defendant relies primarily on the requirement that a Plaintiff must point to "specific instances of prior conduct . . . sufficient to put a reasonable person on notice that the act complained of was likely to occur" *Ware v. King*. Defendant argues that there is no record evidence that tends to show Edwards knew that E.H. had the propensity to commit sexual assault, or that E.H. had a propensity to consume alcohol without parental supervision, or to furnish alcohol to other minors.

Plaintiff argues that several undisputed facts preclude entry of summary judgment: (1) Edwards' failure to provide supervision over E.H.'s shipboard conduct and failure to visit E.H.'s stateroom; (2) Edwards' knowledge that alcohol consumption is common on board cruises; (3) Edwards' history of smuggling alcohol aboard cruises herself, and knowledge that E.H. was aware she had done so; (4) Edwards' knowledge that E.H.'s brother was aware of Edwards' use of Rum Runners to smuggle alcohol aboard previous cruises; and (5) Edwards' failure to instruct E.H.'s brother not to smuggle alcohol aboard, or to check E.H.'s stateroom to ensure there was no alcohol therein.

Plaintiff points primarily to the Ohio Supreme Court's decision in *Huston*, in which the court affirmed the reversal of summary judgment in favor of parents sued for negligent supervision. In *Huston*, the defendant parents had given their minor children permission to throw a New Year's Eve party at which the parents knew that minor children in attendance "probably would have some beer." *Huston*, 556 N.E. 2d 506. Because the parents knew minor children in attendance would consume alcohol at this party, the parents instructed their children to invite their friends to sleep over after the party. *Id.* The parents then left town, leaving the party unsupervised. *Id.* After the party, plaintiff Huston left in a car driven by another party attendee, and was involved in an automobile accident in which he sustained injuries. *Id.* The Ohio Supreme Court found that these facts, viewed in the light most favorable to plaintiff Huston demonstrated that the parents knew alcohol would be consumed at the party, and as evidenced by the invitation to sleep over afterwards, driving home afterwards could be dangerous. *Id.* at 509. Accordingly, the parents could be held liable in tort for the actions of their children.

Plaintiff argues that, like the parents in *Huston*, Edwards knew or should have known that unless she exercised supervision, E.H. was likely to obtain access to and consume alcohol on board. Had she even visited the stateroom in which E.H. was staying, she would have recognized the Rum Runner containing Jack Daniels, as she had used Rum Runners herself on previous occasions. Accordingly, Plaintiff contends that Edwards was on notice that, absent reasonable intervention and supervision, E.H. would consume alcohol on board, and it is this foreseeable consumption of alcohol that led to Plaintiff's damages.

Taking the undisputed facts in the light most favorable to Plaintiff, however, the court concludes that even if these circumstances showed Edwards had knowledge that her son might consume alcohol while on board the ship, none of these facts show any knowledge that E.H. might furnish alcohol to others and commit a sexual assault.

As Edwards notes in her Reply, there was a specific causal connection in *Huston* between the parents' knowledge concerning the consumption of alcohol by minors and dangers of driving home afterwards: it is reasonably foreseeable that, having driven to a party at which alcohol is being consumed, one might drive home drunk afterwards. The parents' invitation of attendees to sleep over after the party highlights that such a chain of events was foreseeable to them.

No such connection can reasonably be drawn from the facts and circumstances of this case. It is not reasonably foreseeable that the consumption of alcohol makes a minor susceptible to committing sexual assault on another. There is no logical connection between the two, as there is with the acts of drinking at a party and driving home after. And fatal to Plaintiff's claim, Plaintiff has come forward with no evidence showing that Edwards knew of

8

any propensity in E.H. to commit sexual assaults, whether under the influence of alcohol or not.

## IV. Conclusion

Plaintiff has not shown that Defendant Edwards had any knowledge of any propensity in her son E.H. to commit sexual assault. Accordingly, Edwards cannot be held liable for the sexual assault alleged to have been committed by E.H., and is entitled to judgment as a matter of law on Count IV of Plaintiff's Amended Complaint.

Therefore, it is **ORDERED, ADJUDGED, and DECREED** that Defendant Jodee C. Edwards' Motion for Final Summary Judgment **(DE #54)** be, and the same hereby is, **GRANTED**.

**DONE** and **ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida this 31st day of August, 2017.

/s/ James Lawrence King
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc: All counsel of record